UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 14-284** |
| **BRANDON LICCIARDI** | **SECTION: "H"(4)** |

## ORDER AND REASONS

Before the Court are Defendant Brandon Licciardi's Motion to Suppress Admission of Video from Ohm Bar (Doc. 198) and Motion to Suppress Audio Recordings of Conversations (Doc. 199). For the following reasons, these Motions are **DENIED**.

## BACKGROUND

On October 22, 2015 the Grand Jury returned a six-count Third Superseding Indictment charging Defendants Brandon Licciardi and Erik

1

Nunez with various criminal violations.[1] Counts One and Two of this indictment charge Mr. Licciardi with witness tampering in violation of 18 U.S.C. § 1512(b)(2)(A).[2] Count Three charges Mr. Nunez with witness tampering in violation of 18 U.S.C. § 1512(c)(1).[3] Count Four charges both Mr. Licciardi and Mr. Nunez with conspiracy to distribute Schedule I and Schedule IV drug controlled substances with the intent to commit rape.[4] Counts Five and Six charge Mr. Licciardi with distribution of Schedule I and Schedule IV drug controlled substances with the intent to commit rape.[5]

Defendants filed multiple pre-trial motions in this matter. At this time, the Court will address Defendant Brandon Licciardi's Motions to Suppress.

## LAW AND ANALYSIS

At the outset the Court notes that though Defendant has styled these motions as "motions to suppress," they are in fact "motions in limine" to exclude evidence under the Federal Rules of Evidence. Motions to suppress generally "deal with the operation of the exclusionary rule or police conduct not immediately relevant to the question of guilt."[6] Put differently, a motion

---

[1] Doc. 168.
[2] Doc. 168.
[3] Doc. 168.
[4] Doc. 168.
[5] Doc. 168. A Fourth Superseding Indictment was issued after these Motions were under submission; however, it does not affect this analysis.
[6] *United States v. Gomez-Benabe*, 985 F.2d 607, 612 (1st Cir. 1993) (citing *Jones v. United States*, 362 U.S. 257, 264 (1960) (internal quotation marks omitted).

to suppress is "[a] request that the court prohibit the introduction of illegally obtained evidence at a criminal trial"[7] while a motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial."[8] Defendant does not allege that the proffered evidence was illegally obtained; rather, he argues that it should be excluded for evidentiary reasons. Accordingly, the Court will construe these Motions as Motions in Limine.

**I. Ohm Video (Doc. 198)**

Defendant Licciardi avers that the Government plans to introduce security footage from the nightclub Ohm in New Orleans that purports to show him slipping drugs into the drink of L.L. Defendant contends that the video should be excluded pursuant to Federal Rule of Evidence 106 because it fails to show several hours of L.L.'s alcohol consumption prior to her interactions with Licciardi.

Rule 106 provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."[9] The rule requires the introduction of omitted portions if they are "relevant and necessary to qualify, explain, or place into context the portion already introduced."[10] Defendant relies on *United States v. Yevakpor* in support of his arguments for

---

[7] MOTION TO SUPPRESS, Black's Law Dictionary (10th ed. 2014).
[8] MOTION IN LIMINE, Black's Law Dictionary (10th ed. 2014).
[9] Fed. R. Evid. 106.
[10] *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) (internal quotations marks omitted) (internal citations omitted).

exclusion of the security footage.[11] In *Yevakpor,* the Defendant was charged with attempted importation of heroin and possession with intent to distribute heroin. During trial, the government sought to introduce portions of video taken during the border stop and search of the Defendant. The video was altered by the government and certain critical portions were deleted, including "the opening of the suitcase, the examination of the contents, the appearance to the suitcase empty, the discovery of the package and the how the package looked prior to removal."[12] The Defendant moved to exclude the remaining video segments. The district court excluded the three non-continuous one minute portions of security footage because the government had failed to preserve the intervening portions of the footage.[13] The preserved portions of the tape failed to show relevant portions of the customs search at issue in that case.[14] Moreover, the court emphasized that the government itself was responsible for the selection of the excerpted clips and the failure to preserve the remainder of the tape.[15] The Court finds that case easily distinguishable from the matter at bar.

With regard to the Ohm footage, the Government had no part in selecting the portion of the tape that was preserved, as it was brought to them by the owner of Ohm. Further, the video at issue is continuous, not the self-selected non-continuous clips presented in *Yevakpor*. Additional portions

---

[11] 419 F. Supp. 2d 242, 246.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

4

of the video are not needed for context, especially where L.L.'s actions prior to the beginning of the tape do not appear to be genuinely in dispute and may be established by other testimony. Though the earlier portions of the video might have been relevant, they are not necessary to place in context the portions sought to be introduced. Accordingly, the Court will not exclude this video under Rule 106.

**II. Audio Recordings of Conversations with Glen McInerney (Doc. 199)**

Defendant Licciardi next seeks to exclude audio recordings of conversations between Glen McInerney and Defendant Licciardi recorded while Mr. McInerney was serving as an FBI informant. The party seeking to introduce a sound recording must present foundational evidence regarding the factors articulated in *United States v. Biggins*, demonstrating "the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alteration in the relevant portions of the recording, and the identification of the relevant speakers."[16] Though strict compliance with the *Biggins* factors requirements is the preferred method of proceeding, a trial judge's "discretion to admit the evidence is not . . . sacrificed to a formalistic adherence to the standard."[17] Accordingly, a trial judge may admit a sound recording if there is independent evidence of the accuracy of the tapes.[18]

---

[16] *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977).
[17] *Id.* at 67.
[18] *Id.*

Two witnesses testified at the hearing on this Motion: Glen McInerney and Agent Robert Blythe, the FBI agent assigned to this case. Mr. McInerney testified that he approached the government to offer services in this case in the hopes of securing a lesser sentence for himself in his own criminal case. He was instructed on the use of the recording device and it was on his person for all recordings. He was present for all conversations. In only one instance was he unable to activate the recording device due to the fact that he was not anticipating a visit from Mr. Licciardi. He testified that recording device had only an "on/off" switch and that he could not play or pause the recordings himself after they were made. He returned the recordings to the FBI on a weekly basis.

Agent Blythe testified that the equipment is owned by the FBI. He stated that he initially attempted to be present when McInerney recorded the conversations at issue, but discovered that this was ultimately not feasible due to the locations where the conversations occurred. He instructed McInerney on the use of the recording devices, which consisted of only an "on/off" switch. He also testified that he retrieved the recorders weekly, and that when replaying the tape the recording indicated the date and time. He testified that the recordings contained no breaks.

The Court pauses to note that this Motion is somewhat premature, as the Government has yet to seek to introduce specific portions of the tapes. This ruling is therefore confined to an analysis of the specific grounds for exclusion offered by Defendant as to each of the *Biggins* factors. At this time

the Court can make preliminary findings as to Mr. McInerney's competency to operate the equipment, the fidelity of the equipment, and the absence of material alterations. The Court may revisit the admissibility of specific portions of the tapes at trial.

### A. Competency to Operate the Equipment

Defendant first avers that the Government cannot show that Mr. McInerney was competent to operate the recording equipment. This Court disagrees. Based on testimony from both FBI Agent Robert Blythe and Mr. McInerney, the Court is satisfied that the Government has laid a sufficient foundation on this prong. Defendant contends that Mr. McInerney is not competent to operate the equipment because the conversations were not monitored in real time by an FBI agent; however, he has pointed the Court to no authority indicating that real time monitoring of undercover informants is a prerequisite to the admissibility of statements they record. Agent Blythe testified that he instructed Mr. McInerney on the operation of the recording equipment, which consisted of a simple "on/off" switch. He further testified that the FBI gave him direction on where to place the equipment. Despite Defendant's assertions, Mr. McInerney need be neither a law enforcement agent nor skilled in electronic surveillance to operate such simple equipment. Accordingly, the Court finds that the Government has laid an adequate foundation regarding Mr. McInerney's competency to operate the equipment.

**B. Fidelity of the Equipment**

Defendant next challenges the fidelity of the recording equipment on similar grounds—namely, that the monitoring equipment was not "procured, maintained, calibrated, or affixed" to Mr. McInerney's body by a law enforcement agent. Once again, he cites to no authority indicating that this degree of law enforcement involvement is a prerequisite to admissibility. Mr. McInerney was unable to manipulate the recordings in any way, as retrieving them from the device requires special software and adapters that are exclusively in the FBI's possession. The FBI supplied Mr. McInerney with two recorders should one fail. Further, the FBI checked the recorders on a weekly basis. Accordingly, the Government has laid a sufficient foundation as to the fidelity of the equipment used.

**C. Absence of Material Alterations**

Defendant argues that Mr. McInerney's control over the location of the conversations amounts to a material alteration of the recording. Both Mr. McInerney and Agent Blythe testified, however that Mr. McInerney was unable to alter the recording in any way while the recorders were in his possession. The location of the subject conversations is immaterial, as Mr. McInerney had no ability to modify the recording after it was captured by the recording device. Accordingly, the Court is satisfied that there is a sufficient foundation to find that there are no material alterations to the recordings.

**D. Identification of the Relevant Speakers**

Defendant further avers that, should the Court allow the recordings at issue, Mr. McInerney should be required to testify to identify the Defendant's voice on the recording. Federal Rule of Evidence 901(b)(5) provides that "[a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker" is admissible. "Rule 901(b)(5) merely requires that the witness have some familiarity with the voice which he identifies."[19] Familiarity with the particular voice need not be gleaned from participation in the recorded conversation.[20] Accordingly, the Court declines to compel the government to introduce the statement through the testimony of Mr. McInerney. Until the Government seeks to introduce specific portions of the tapes, this Court cannot make a finding as the ability of Mr. McInerney or any other witness to identify the voices heard thereon.

In conclusion, the Court declines to order the exclusion of audio recordings made by Glen McInerney at this time. As the trial unfolds and the

---

[19] *United States v. Cuesta*, 597 F.2d 903, 915 (5th Cir. 1979).

[20] *See United States v. Norman*, 415 F.3d 466, 472 (5th Cir. 2005) (finding that DEA agents could properly identify a defendant's voice on an audio tape of a drug transaction based on familiarity with his voice acquired in an hour long interview that took place at a later time); *United States v. Lampton*, 158 F.3d 251, 259 (5th Cir. 1998) (finding that FBI agent could identify voice in wire-tapped conversation recordings based on prior personal contact with a defendant).

Government seeks to admit specific portions of audio recording, the Court may revisit this issue.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Suppress (Docs. 198 and 199) are **DENIED**.

New Orleans, Louisiana this __8_th day of April, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**